Gary GILBERT

v.

David FELD, Zeev Shenkman, Richard Tompkins, the Law Firm of Fox, Differ, Callahan, Ulrich & O'Hara, a partnership, and Edmund Justice.

Civ. A. No. 91–3804.

United States District Court, E.D. Pennsylvania.

March 30, 1992.

William J. Gallagher, Randy L. Sebastian, West Chester, Pa., for plaintiff.

Richard H. Martin, Astor, Weiss & Newman, Philadelphia, Pa., for defendants Feld and Shenkman.

Albert P. Massey, Jr., George B. Randolph, Marc D. Manoff, Lentz, Cantor, Kilgore & Massey, Paoli, Pa., for defendants Tompkins and Fox, Differ, Callahan, Ulrich & O'Hara.

Ward A. Cotton, Norristown, Pa., for defendant Justice.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

### I. *Introduction*

On June 14, 1991, plaintiff, Gary Gilbert ("Gilbert"), filed the Complaint in the above-captioned matter against defendants David Feld ("Feld"), Zeev Shenkman ("Shenkman"), Richard Tompkins ("Tompkins"), the Law Firm of Fox, Differ, Callahan, Ulrich & O'Hara, a partnership ("Fox, Differ"), and Edmund Justice ("Justice"). The Complaint alleges causes of action against all defendants for: (1) violation of plaintiff's civil rights under 42 U.S.C. § 1983, (2) malicious prosecution, (3) abuse of process, (4) false arrest/imprisonment, (5) intentional infliction of emotional distress, and (6) civil conspiracy. Plaintiff asserts three alternative grounds for federal jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 based on the 42 U.S.C. § 1983 claim, (2) diversity of citizenship jurisdiction under 28 U.S.C. § 1332 based on the facts that plaintiff is a citizen of Florida, defendants are all citizens of Pennsylvania, and the amount in controversy, exclusive of interest and costs, exceeds $50,000.00, and (3) civil rights jurisdiction under 28 U.S.C. § 1343 also based on the 42 U.S.C. § 1983 claim. Currently for disposition before this court are three separate motions to dismiss plaintiff's complaint.

### II. *Statement of Facts*

The following facts are alleged in plaintiff's complaint. In late summer, 1986, Feld, through his agent Shenkman, began to negotiate for the purchase of property located in King of Prussia, Pennsylvania, in order to develop a Today's Man outlet. Complaint at 3. Feld employed Fox, Differ to provide legal counsel in this endeavor. *Id.* Shenkman eventually hired real estate agent, John D. McAllister, Jr. ("McAllister"), to negotiate for the purchase of 115

West DeKalb Pike (hereinafter referred to as "the Property"). *Id.* McAllister was aware that the property was owned by two individuals: Gilbert and Gilbert's grandmother, Edith Suny ("Suny"). *Id.* at 4. After a series of discussions between Gilbert and McAllister, a meeting was held on October 31, 1986, which was also attended by Shenkman. *Id.* At this meeting Gilbert's ownership of and authority to sell the property were never discussed. *Id.* Subsequently, McAllister, acting as an agent of Feld, prepared an agreement of sale for the property which listed Gilbert as seller and the purchase price as $454,-000.00. *Id.* After minor changes were affected in the agreement of sale by Gilbert's attorney, the agreement, a rider and an endorsement were fully executed by Gilbert and Feld. *Id.* At no time did Gilbert ever represent himself to be the sole owner of the property. *Id.* A deed dated August 29, 1985 and recorded in the Montgomery County Recorder of Deeds Office listed Suny as co-owner of the property. *Id.* at 4–5. By early December, 1986, Feld's attorneys were in possession of a title report which indicated that Suny was co-owner of the property. *Id.* at 5. Both Feld and Shenkman were privy to the shared ownership of the property by December 10, 1986. *Id.* Notwithstanding this knowledge, on February 3, 1987, Feld extended the agreement of sale an additional six months. *Id.*

In mid-July, 1987, Shenkman telephoned Gilbert, accused him of breaking the law, and threatened to notify authorities if Suny's signature was not immediately obtained on the agreement of sale. *Id.* An amendment to the agreement of sale was executed by Gilbert, Suny and Feld on July 17, 1987 which provided for an increase in the purchase price to $520,000.00. *Id.* at 5–6. Pursuant to discussions with Shenkman, attorney Callahan (from Fox, Differ) instructed attorney Tompkins to encourage the institution of criminal charges against Gilbert through use of his contacts as a former Assistant District Attorney. *Id.* at 6. Tompkins, acting in concert with Fox, Differ, Feld and Shenkman, procured the institution of criminal charges against Gilbert by providing false and misleading information to and by concealing information from the Montgomery County District Attorney's Office. *Id.*

Justice, a County Detective, was assigned responsibility for the investigation, arrest and prosecution of Gilbert. *Id.* at 7. On September 15, 1987, Justice signed the criminal complaint and swore to the truth of the statements in the affidavit of probable cause without conducting an independent investigation and without knowledge as to the accuracy of any of the information in the affidavit. *id.* The affidavit of probable cause contained false and inaccurate statements and omitted relevant information. *Id.* at 8. The criminal complaint was presented to and signed by District Justice Katherine Speers on September 15, 1987. *Id.* at 9. Neither Gilbert nor his attorney was informed of Gilbert's impending arrest. *Id.*

Settlement took place on September 16, 1987, at which time the property was conveyed by deed from Gilbert and Suny to Feld for $520,000.00. *Id.* Immediately thereafter, Gilbert was identified by Tompkins for Justice who then made the arrest. *Id.* Gilbert remained in custody while he was transferred to Montgomery County, processed and arraigned. *Id.* On October 23, 1987, the Court of Common Pleas of Montgomery County granted Gilbert's petition for a writ of habeas corpus, dismissing the criminal complaint on the ground that the affidavit alleged facts without identifying the source of the information and was, therefore, insufficient to establish probable cause. *Id.* at 10.

The defendants eventually procured the initiation of a second criminal prosecution by providing the same false and misleading information to the District Attorney's office. *Id.* Notwithstanding his knowledge of information to the contrary, Justice signed an affidavit of probable cause containing false and misleading statements and material omissions on March 8, 1988. *Id.* at 11. The second criminal complaint was presented to and signed by District Justice Kowal. *Id.* at Exhibit G. Apparently, pursuant to this complaint, Gilbert was arrested a second time. *Id.* at 13. On

January 5, 1989, the Court of Common Pleas of Montgomery County granted Gilbert's petition for a writ of habeas corpus and dismissed the charges. *Id.*

### III. *Issues Presented*

Three separate motions to dismiss plaintiff's complaint have been filed by Feld and Shenkman (jointly), Tompkins and Fox, Differ (jointly) (hereinafter jointly referred to as "the attorney defendants"), and Justice (individually). The questions raised by these motions are numerous, varied and complex. Taken together and somewhat simplified, however, the motions present the following issues:

(A) Whether the complaint states a claim under 42 U.S.C. § 1983 against Feld, Shenkman, Tompkins and Fox, Differ (hereinafter collectively referred to as "the private-party defendants").

(B) Whether the complaint states a claim under 42 U.S.C. § 1983 against Justice.

(C) Whether the complaint states a Pennsylvania common law claim for malicious prosecution.

(D) Whether the complaint states a Pennsylvania common law claim for abuse of process.

(E) Whether the complaint states a Pennsylvania common law claim for false arrest and imprisonment.

(F) Whether the complaint states a Pennsylvania common law claim for intentional infliction of emotional distress.

(G) Whether the complaint states a Pennsylvania common law claim for civil conspiracy.

(H) Whether plaintiff's claims are barred by the applicable statute of limitations periods.

(I) Whether plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 9 or 10.

These issues will now be addressed in order.

### IV. *Discussion*

#### A.

The private-party defendants argue that plaintiff's complaint fails to state a claim against them under 42 U.S.C. § 1983. In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all of the well-pleaded allegations of the complaint as true and construe the complaint liberally in the light most favorable to plaintiff." *Robb v. City of Philadelphia,* 733 F.2d 286, 291 (3d Cir. 1984) (citing *Gomez v. Toledo,* 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980)). The court must then determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989), (quoting *Estate of Baily by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)). A motion to dismiss should only be granted when it appears beyond doubt that plaintiff can prove no set of facts that will support the claims set forth in the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ This general standard for 12(b)(6) motions is modified somewhat, however, in the case of civil rights claims brought under 42 U.S.C. § 1983. There is an added requirement in such cases that the "complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintif[f]." *Colburn,* 838 F.2d at 666 (quoting *Ross v. Meagan,* 638 F.2d 646, 650 (3d Cir.1981)).

The Third Circuit has identified two rationales for this added specificity requirement. First, the requirement is "intended to weed out at an early stage frivolous claims and those that should be heard in state court." *Frazier v. Southeastern Pennsylvania Transp. Auth.,* 785 F.2d 65, 67 (3d Cir.1986) (citing *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir. 1976)). Second, the requirement is "designed to provide the defendant with sufficient notice of the claims asserted." *Frazi-*

er, at 67 (citing *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir.1978)).

Whether a complaint alleging a civil rights violation satisfies the added specificity requirement is an issue to be determined on a case-by-case basis. There is no bright-line rule governing this determination. *Frazier*, 785 F.2d at 68. Specific rules and factors developed by courts in the past and discussed in prior decisions may provide limited guidance in this determination, but such rules and factors must be considered in light of the underlying rationales of the added specificity rule. *Id.* The court must ask whether the complaint pleads sufficient facts to "determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Id.* Tempering this inquiry, however, is the principle that the court cannot "expect a complaint to provide proof of plaintiff's claims, nor a proffer of all available evidence." *Id.*

■ Before the added specificity rule can be applied to test the sufficiency of the complaint, the elements of a 42 U.S.C. § 1983 claim should be outlined. There are two essential elements. The plaintiff must prove (1) that he was deprived of rights, privileges or immunities secured by the Constitution or laws of the United States due to (2) the conduct of a person acting under color of state law. *Cohen v. City of Philadelphia*, 736 F.2d 81, 83 (3d Cir.1984), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). The conduct related to the second prong does not necessarily have to be performed by a state official. It has long been recognized by the courts that state action can be attributable to private individuals in the context of a § 1983 claim. Unfortunately, existing case law concerning when a private individual can be considered a state actor under § 1983 is inconsistent and confusing. A brief synthesis of this case law is necessary, therefore, to facilitate further discussion.

Some of the defendants, in their briefs, have identified, within the Third Circuit, two apparently distinct judicial methodologies for determining when state action can be attributed to a private individual for purposes of a § 1983 claim.

The first will be referred to as the "conspiracy theory." Under the conspiracy theory, a private party may be liable under 42 U.S.C. § 1983 if he was acting "in concert" with public officials. *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977); *Smith v. Butler*, 507 F.Supp. 952, 954 (E.D.Pa.1981). The conspiracy theory focuses on the relationship between the public and private entities being charged with the § 1983 violation. This theory originated in *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Here, the Court held that the defendant restaurant could be charged with acting under color of state law if the defendant had an "understanding" with a city policeman to deny plaintiff service or to cause plaintiff's subsequent arrest due to her association with black people. *Id.* at 152, 90 S.Ct. at 1605. *See also, Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) (private party linked to judge in corrupt conspiracy a state actor).

The other Third Circuit method for determining when a private individual may be regarded as a state actor under 42 U.S.C. § 1983 may be labeled the "improper delegation theory." Under this theory, a court must determine whether "the state, through its agents or laws, has established a formal procedure ... that drapes private actors with the power of the state." *Cruz v. Donnelly*, 727 F.2d 79, 82 (3d Cir.1984); *Smith v. Wood*, 649 F.Supp. 901, 906 (E.D.Pa 1986).[1] Unlike the conspiracy theory, which focuses on the relationship between the public and private defendants, the improper delegation theory concentrates on the nature of the state-authorized

---

1. The *Smith* court refers to what this court is labeling the improper delegation theory as a "joint action" claim.

procedures giving rise to the alleged § 1983 violation. The conspiracy theory involves the assertedly unconstitutional consequences of joint (public and private) mis-use (or abuse) of otherwise valid state procedures, while the improper delegation theory involves the assertedly unconstitutional consequences of placing in private hands the exercise of state power. The improper delegation theory seems to have originated in *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). There, the Court found state action attributable to private creditors who used state prejudgment attachment procedures to deprive plaintiff-debtor of his property. *Id.* at 942, 102 S.Ct. at 2756. The state procedures provided for attachment on the *ex parte* application of the creditors. *Id.* The Court apparently reasoned that such procedures permitted private parties to substitute their judgment for that of the state. Thus, under the improper delegation theory, a private party's mere invocation of certain state procedures can render such conduct actionable under 42 U.S.C. § 1983.[2] *Cruz*, 727 F.2d at 82. *Compare with Rendell–Baker v. Kohn*, 457 U.S. 830, 841–42, 838 n. 6, 102 S.Ct. 2764, 2771–72, 2770 n. 6, 73 L.Ed.2d 418 (1982) (state regulation giving state agency power to approve persons hired by private school did not render school's decision to discharge state action). We will now consider whether plaintiff's 42 U.S.C. § 1983 claim against the private-party defendants is viable under either theory.

■ First, viewed in terms of the conspiracy theory, the § 1983 claim stated against the private-party defendants is insufficient. Nowhere in the complaint does the plaintiff allege facts that indicate the existence of a conspiracy between the private-party defendants and any state official. In fact, the complaint states that the private-party defendants provided the Montgomery County District Attorney's Office with false and misleading information in order to instigate criminal charges against plaintiff. Complaint at 6. The private-party defendants also allegedly concealed information from the public officials involved. *Id.* These allegations preclude a finding that there was a conspiracy between the private and public parties. A conspiracy cannot exist, for purposes of § 1983, where the public officials are unaware of the violative nature of their actions due to the misrepresentations of the private parties. Plaintiff's mere use of the words "conspiring" and "acting jointly in concert" on page 12 of the complaint does not save this claim under the conspiracy theory. The lack of supporting factual allegations makes these words empty labels. In addition, plaintiff's allegation, on page 11 of the complaint, that Justice was aware of mistakes in the affidavit of probable cause associated with the second arrest is insufficient to show that an agreement or plan existed between Justice and the private-party defendants to deprive plaintiff of his rights.

■ Second, plaintiff does not undertake to state a § 1983 claim tenable under the improper delegation theory. Nowhere in the complaint does plaintiff state facts indicating that a state procedure was such that it allowed private parties to substitute their own judgment for that of the state. Accordingly, the § 1983 action against the private-party defendants will be dismissed.

### B.

■ It appears that, with respect to Justice, plaintiff's complaint alleges sufficient facts to make out a § 1983 claim. As set forth above, the complaint must state that (1) plaintiff was deprived of rights, privileges or immunities secured by the Constitution or laws of the United States due to (2) the conduct of a person acting under the color of state law. *Cohen*, 736 F.2d at 83. Both of these elements are clearly alleged. First, plaintiff alleges that his arrest was conducted without probable cause. Arrest without probable cause violates rights

---

**2.** The *Lugar* Court explained that private individuals who "innocently" utilize valid state procedures and who are subsequently charged with a § 1983 violation would have an affirmative "good-faith" defense. *Lugar,* 457 U.S. at 942, 102 S.Ct. at 2756 n. 23.

guaranteed under the Fourth Amendment. *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979). Second, since Justice is a public official, state action is established merely in plaintiff's allegation that Justice was acting in his official capacity as a County Detective. In addition, the facts alleged are sufficient to (1) show that the claim is not totally frivolous and (2) provide defendant with sufficient notice of the claims asserted. *Frazier,* 785 F.2d at 68.

■ Justice also argues, however, that the complaint should nevertheless be dismissed due to his defense of qualified immunity. Justice argues that the complaint fails to set forth facts showing that a reasonable law enforcement official, in Justice's position, would have been on notice that probable cause did not exist. Such qualified immunity analysis, however, is inappropriately raised on a motion to dismiss. The defense of qualified immunity can support the grant of a Rule 12(b)(6) motion only when the complaint itself establishes the circumstances required for a finding of qualified immunity. *Green v. Maraio,* 722 F.2d 1013, 1018–19 (2d Cir.1983) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982)). Plaintiff's complaint does not set forth facts establishing qualified immunity. A qualified immunity defense can, therefore, not be used to defeat the claim on this 12(b)(6) motion. Although Justice may be correct in asserting that the complaint does not disprove that a valid qualified immunity defense exists, this is not required for the complaint to survive a motion to dismiss. Essentially, unless plaintiff admits, in the complaint, that defendant is entitled to qualified immunity, such defense cannot be used to defeat the claim at this preliminary stage. Rather, defendant must avail himself of this defense on a motion for summary judgment. This rule allows the issue to be fully briefed and argued by both parties while still providing a speedy resolution of the matter to any defendant truly deserving qualified immunity.

[D]amage suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly sup-

ported motion for summary judgment based on the defense of immunity. In responding to such a motion, plaintiff may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that ... officials are not harassed by frivolous lawsuits.

*Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) (citations omitted) (referring to federal officials).

### C.

■ Under Pennsylvania law, the tort of malicious prosecution has three elements: the defendant must have instituted proceedings against plaintiff (1) without probable cause and (2) with malice; and (3) the proceedings must have terminated in favor of the plaintiff. *Kelly v. Local Union 249,* 518 Pa. 517, 544 A.2d 940, 941 (1988). It is not necessary that defendant institute the proceedings himself. Liability for malicious prosecution can also attach when defendant influences a third party to initiate the proceedings. *Hess v. County of Lancaster,* 100 Pa.Cmwlth. 316, 514 A.2d 681, 683–84 (1986). Plaintiff clearly alleges the facts necessary to state a claim for malicious prosecution. Under *Hess,* this claim is as valid against the private-party defendants as it is against Justice.

### D.

■ To state a cause of action for abuse of process under Pennsylvania law, plaintiff must allege an ulterior motive and a use of the process for a purpose other than that for which it was designed. *Harvey v. Pincus,* 549 F.Supp. 332, 340 (E.D.Pa.1982), *affirmed,* 716 F.2d 890 (1983), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The existence of probable cause is immaterial. *Id.* Plaintiff need not show that the prior proceedings were terminated in his favor. *Id.* Again, plaintiff clearly alleges the necessary elements of this tort in his complaint against all of the defendants.

### E.

 Under Pennsylvania law, false arrest or imprisonment consists of an arrest or restraint without adequate legal justification. *Cf. Forgione v. United States*, 202 F.2d 249, 252 (3d Cir.1953), *cert. denied*, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384 (1953). Although it is unclear whether a false arrest/imprisonment claim can lie against one who instigated an arrest or imprisonment through his influence on a third party, allowance of such a claim would seem proper under the reasoning of *Hess*. Accordingly, plaintiff's complaint is deemed sufficient to state the tort of false arrest/imprisonment as against all defendants.

### F.

 Under Pennsylvania law, the elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) which is intentional or reckless, and (3) causes severe emotional distress. *Denenberg v. American Family Corp. of Columbus, Ga.*, 566 F.Supp. 1242, 1251 (E.D.Pa.1983). Plaintiff's complaint sufficiently states this cause of action against all defendants.

### G.

 Civil conspiracy is actionable, under Pennsylvania law, when (1) an overt act is performed (2) in pursuit of the common purpose or design held by the conspirators, and (3) actual legal damage results. *Cohen v. Pelagatti*, 364 Pa.Super. 573, 528 A.2d 657, 658 (1987). As discussed, *supra*, in section A., the plaintiff has failed to allege facts tending to establish that a conspiracy existed between the private-party defendants and Justice. Therefore, the complaint does not state a cause of action for civil conspiracy against Justice. The complaint is sufficient, however, in stating a civil conspiracy claim against the private-party defendants.

### H.

 Defendants also contend that plaintiff's claims are barred by the applicable statutes of limitations. The limitations period applicable to all of plaintiff's common law claims is two years. 42 Pa.C.S. § 5524. Since Congress did not establish a federal statute of limitations for actions brought under 42 U.S.C. § 1983, the two-year state limitations period for the analogous common law actions is utilized. *Haefner v. Lancaster County, Pa.*, 520 F.Supp. 131, 132 (E.D.Pa.1981), *affirmed*, 681 F.2d 806 (3d Cir.1982), *cert. denied*, 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). Plaintiff's original complaint in the superseded action No. 90–6458 ("the 1990 complaint") brought identical claims against the defendants in the present action. The 1990 complaint satisfied the statute of limitations requirement as to all claims. Pursuant to the Order of this court dated May 1, 1991, plaintiff was instructed to file the complaint in the present action so that two related actions (89–6581 and 90–6458) could be consolidated. The complaint in the present action satisfies the limitations requirements through its relationship to and derivation from the 1990 complaint.

### I.

Defendants also argue that plaintiff's complaint fails to satisfy the requirements of Federal Rules of Civil Procedure 8, 9 and 10. Rule 8 requires a pleader to set forth (1) a short, plain statement asserting jurisdictional grounds, (2) a short, plain statement of each claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief pleader is seeking. Fed.R.Civ.P. 8(a). Plaintiff's complaint clearly includes each of these three items.

Rule 9 provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Despite the fact that neither fraud nor mistake is averred in the complaint, defendants contend that this rule should be applicable to plaintiff's allegations. The contention is unpersuasive.

Rule 10 requires, *inter alia*, that each claim founded on a separate transaction or occurrence be stated in a separate count when such arrangement facilitates under-

standing. Fed.R.Civ.P. 10(b). Plaintiff's complaint is straightforward and understandable. Defendants are unconvincing in their assertion that organization of the complaint into separate counts would enhance clarity of presentation.

## V. *Conclusion*

For the foregoing reasons defendants' motions to dismiss will be granted in part and denied in part. The attorney defendants' motion will be granted with respect to the 42 U.S.C. § 1983 claim and denied with respect to all other claims. Feld and Shenkman's motion similarly will be denied except with respect to the § 1983 claim. Justice's motion will be granted with respect to the Pennsylvania common law civil conspiracy claim and denied as to all other claims.