**TOTAL CARE SYSTEMS, INC., Plaintiff,**

v.

**Richard S. COONS, Defendant.**

No. 94–CV–2043.

United States District Court, E.D. Pennsylvania.

Aug. 16, 1994.

Norman E. Greenspan, Richard L. Kremnick, Neal A. Jacobs, David E. Colton, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for plaintiff.

Bruce R. Genderson, Dane H. Butswinkas, Rebecca G. Haile, Philip J. Goodman, Williams & Connolly, Washington, DC, for defendant.

### Memorandum & Order

JOYNER, District Judge.

Before the Court is a motion to dismiss several counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, Total Care Systems, Inc. ("TCS"), brought this action against defendant, Richard S. Coons, in March 1994 alleging breach of contract and unfair competition. In his answer, Coons filed counterclaims alleging tortious interference and abuse of process. TCS now seeks to dismiss Coons' counterclaims. For the reasons that follow, the motion is denied with respect to the tortious interference counterclaims and granted with respect to the abuse of process counterclaim.

### Facts

In 1970 defendant Coons founded a nonprofit corporation called Adult Communities Services, Inc. ("ACTS"). ACTS owns fourteen retirement homes in Pennsylvania, Florida, and North Carolina. Since its founding Coons has been chairman of ACTS' board of directors.

In or about 1979 Coons founded TCS, the for-profit corporation that has since become his opponent in this action. Coons founded

TCS to perform management and marketing functions for ACTS, functions which ACTS had been performing for itself. TCS has since been sold twice—in 1989 to Robert N. Verratti, and in 1990 to its current owner, Genesis Health Ventures, Inc. Throughout, TCS has continued to perform management and marketing services for ACTS.

When he sold TCS, Coons became a senior management employee of that company under the terms of an employment agreement ("the agreement"). One of Coons' responsibilities under the agreement was managing TCS' obligations under its contract with ACTS. In addition to conventional employment contract provisions, Coons' agreement with TCS included a covenant not to compete, which prohibited Coons from managing, operating, or assisting with any entity that competes with TCS.

This dispute concerns alleged breaches of Coons' employment agreement with TCS, purportedly brought about by criticisms he made about TCS' management practices. TCS alleges in its complaint, *inter alia*, that Coons' harsh criticisms to ACTS' board of directors and in public were contrary to TCS' interests and, therefore, in violation of Coons' employment agreement. TCS further alleges that Coons helped prepare ACTS to assume its own management and engaged in actions to terminate TCS' business with ACTS, in violation of the agreement's covenant not to compete. In addition to these alleged contractual breaches, TCS alleges that Coons breached his duties of loyalty and good faith to TCS, and that he unfairly used his position to damage ACTS' contractual relations with TCS.

At issue here are Coons' counterclaims for interference with lawful business (Count I), interference with fiduciary duty (Count II), interference with employment relations (Count III), and abuse of process (Count IV), each of which TCS seeks to dismiss.

Coons contends that TCS' management services have deteriorated since its acquisition by Genesis and that TCS became so disconcerted with ACTS' negative assessments of its performance that it tortiously interfered with Coons' employment, business, and fiduciary relations with ACTS. He further contends that TCS has abused the judicial process both in commencing this action and in its actions after commencing this action. Specifically, Coons argues TCS' motion for expedited discovery and its motion for a preliminary injunction were made to harass him and to divert attention from TCS' allegedly poor management practices.

### Standard of Review

■■■ A motion to dismiss for failing to state a claim for which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, can be granted only when it appears that the claimant (Coons here) can prove no set of facts in support of his claim that would entitle him to relief. *Labov v. Lalley*, 809 F.2d 220, 221–22 (3d Cir.1987) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In reviewing a Rule 12(b)(6) motion, the court must accept as true all of the matters pleaded and draw all reasonable inferences in favor of the claimant. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 809 (3d Cir.1990). The court primarily considers the allegations in the complaint, but may consider other elements in the record including orders, memoranda, and briefs. *Id.* at 812; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993); *In re Epps*, 110 B.R. 691 (E.D.Pa. 1990); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357, at 299 (2d ed. 1990 & Supp.1994). If the facts pled in the counterclaim, and the reasonable inferences therefrom, are legally insufficient then the motion may be granted. *McCoy v. United States*, 758 F.Supp. 299, 301 (E.D.Pa.1991).

### Discussion

### I. Tortious Interference Claims

■■■ TCS first argues that Coons lacks standing to bring his tortious interference counterclaims (Counts I–III) because only ACTS has a cause of action with respect to those claims. It is no doubt the law that alleged injuries to corporations create causes of action belonging solely to corporations,

*see, e.g., Pitchford v. PEPI, Inc.,* 531 F.2d 92, 97 (3d Cir.1975), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976); *John L. Motley Assoc., Inc. v. Rumbaugh,* 104 B.R. 683, 686 (E.D.Pa.1989), and that an officer of a corporation has no individual cause of action for damages that result indirectly from an injury to the corporation, *Bohm v. Commerce Union Bank of Tenn.,* 794 F.Supp. 158, 166 (W.D.Pa.1992). However, TCS' argument is without merit because the instant action is different: Coons is claiming personal damages that are the direct result of TCS' alleged interference with his relations with ACTS.

■ An individual officer may bring an action directly against a third party where he pleads direct individual injuries that are separate from any suffered by the corporate entity involved. *Temp–Way Corp. v. Continental Bank,* 139 B.R. 299, 317 (E.D.Pa. 1992), *aff'd,* 981 F.2d 1248 (3d Cir.1992). Therefore, whether the cause of action belongs to the individual or the corporation depends on the nature of the wrong alleged in the pleadings. *See* 12B Fletcher Cyclopedia Corporations § 5911, at 484 (Perm.Ed. 1993).

Coons' counterclaims of tortious interference (Counts I–III) allege injuries that are distinct from any suffered by ACTS; indeed, injuries to ACTS have not been alleged. Coons alleges that he himself has suffered monetary, emotional and reputational injuries as a direct result of TCS' alleged interference. From the point of view of standing, therefore, Coons can bring these tortious inference claims before this Court.[1]

■ We may now turn to reviewing the tortious interference counterclaims themselves. Pennsylvania has long recognized a cause of action for interference with existing contractual relations. "It is generally recognized that one has the right to pursue his business or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of absolute right." *Adler, Barish, Daniels, Levin & Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175, 1182 (1978) (citation omitted), *cert. denied,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979). In reviewing such claims, the Pennsylvania Supreme Court has adopted the framework of section 766 of the Restatement (Second) of Torts (1979).[2] *Id.*

■ TCS contends that Coons' tortious interference claims must fail under section 766 analysis, arguing that his claims are appropriate only under section 766A of the Restatement,[3] which TCS asserts has not been adopted by the Pennsylvania Supreme Court. Coons, on the other hand, argues that he has stated valid claims under either section 766 or section 766A, and asserts that both sections apply in Pennsylvania.

As is evident from the language of the Restatement provisions, the difference between the two sections lies in the object of the alleged interfering conduct (see emphasized portions in footnotes 2 and 3). *Windsor Sec., Inc. v. Hartford Life Ins. Co.,* 986 F.2d 655, 660 (3d Cir.1993). This is a not the same concern as which party suffers damages; at this point the focus of our analysis is on which party was interfered with to bring about the damages. The interference contemplated by section 766 is aimed at the

---

1. Of course, to the extent Coons claims that he has been damaged indirectly by a breach of his fiduciary duty to ACTS, these claims do not withstand TCS' motion since such a claim would belong to ACTS.

2. Section 766 provides that
   [one] who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person *by inducing or otherwise causing the third person not to perform* the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979) (emphasis added).

3. Section 766A provides that
   [o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, *by preventing the other from performing the contract* or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.
   Restatement (Second) of Torts § 766A (1979) (emphasis added).

third party, causing the third party to breach its contract with the allegedly injured claimant. Under section 766A, the interference is directed at the claimant herself, obstructing her own performance of the contract with the third party and causing injury to the claimant as a result. In both cases, the claimant is allegedly injured; the difference lies in the means through which the injury occurs. In *Windsor*, the U.S. Court of Appeals for the Third Circuit compared the two Restatement provisions. The court declined to decide whether section 766A applies in Pennsylvania, but suggested that section 766, which does apply in this state, presents a more justifiable doctrine. *Id.* at 662–63.

In the case before us, we find Coons has stated a claim under section 766, and therefore we do not reach the issue of whether section 766A applies. To survive TCS' motion under section 766 (in which the third party, not the claimant, is the object of interference), Coons must allege that ACTS, not Coons himself, was the object of TCS' interfering conduct. Coons has done this; he has alleged, *inter alia*, that TCS made disparaging remarks to ACTS concerning Coons, that TCS attempted to coerce ACTS and ACTS' board into ignoring TCS' alleged poor management, and that TCS attempted to coerce and intimidate ACTS into discharging Coons. All of these allege conduct aimed at ACTS, not Coons. Therefore, with respect to the object of the alleged interference, Coons' tortious interference claims survive TCS' motion.

■ TCS also contends that Coons has failed to allege the necessary elements of the section 766 tort. The elements of intentional interference with existing contractual relations are (1) the existence of a contractual relationship, (2) an intent on the part of the alleged interfering party to harm the claimant by interfering with those contractual relations, (3) absence of privilege or justification for the interference, and (4) damages. *Schulman v. J.P. Morgan Inv. Management, Inc.*, 829 F.Supp. 782, 784 n. 2 (E.D.Pa.1993) (citing *Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 581 A.2d 619, 625 (1990)). We examine each element in turn.

*(1) Existence of Contractual Relations.* Although TCS contends that Coons does not allege a contractual relationship, Coons has alleged the element sufficiently to withstand TCS' motion. It is undisputed that Coons is chairman of ACTS' board of directors. Furthermore, in the factual allegations of his counterclaim, Coons claims he has a fiduciary responsibility to ACTS and that he has been employed in a supervisory role for ACTS. It is entirely reasonable to infer a contractual relationship from these allegations. Since, in reviewing this motion we must accept Coons' allegations as true and draw all reasonable inferences in his favor, we find Coons has sufficiently pled the existence of a contractual relationship.

■ *(2) Intent to Harm by Interference.* As with intentional torts generally, intent in this case may be shown where the actor knows an injury is certain or substantially certain to occur as a result of his action. *Reliable Tire Distrib., Inc. v. Kelly Springfield Tire Co.*, 592 F.Supp. 127, 139 (E.D.Pa. 1984) (citing Restatement (Second) of Torts § 766 cmt. j (1979)). Coons has alleged, *inter alia*, that TCS made disparaging remarks about him to ACTS' employees, that TCS attempted to intimidate ACTS into discharging Coons, and that TCS communicated incomplete and misleading information about him to ACTS. Accepting these allegations of interference as true, one could reasonably infer that TCS' conduct would be substantially certain to interfere with Coons' contractual relations with ACTS. Furthermore, in each of his first three counts, Coons alleges that TCS knowingly and purposefully intended to interfere with his contractual relations with ACTS. Therefore, we find Coons has sufficiently pled this element.

■ *(3) Absence of Privilege or Justification.* To be tortious, conduct must be improper or wrong. With respect to interference in contractual relations, the Pennsylvania Supreme Court has noted the parallels between notions of propriety, privilege and the protection of legitimate interests. *Adler, Barish*, 482 Pa. 416, 393 A.2d at 1183. The same court has recognized and accepted the Restatement (Second) of Torts' emphasis on the concept of propriety rather than privilege

in evaluating tortious interference claims. *Id.* 393 A.2d at 1184 n. 17. Specifically, the court has adopted section 767 of the Restatement, which sets forth seven factors to consider in determining whether interference is proper.[4] *Id.* In addition to alleging the nature of the interfering conduct itself, Coons has also alleged TCS had a "knowing and purposeful" intent to interfere with Coons' relationship with ACTS. Considering these allegations in light of the section 767 factors, and once again bearing in mind the standard of review for a Rule 12(b)(6) motion, we find Coons could prove a set of facts to support his claims that TCS' alleged interference was improper.

■■■■ *(4) Damages.* Liability under section 766 extends to damages for the pecuniary loss of the contract interfered with, consequential losses for which the interference is the legal cause, and emotional and reputational damages if they are reasonably to be expected to result from the interference. *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 40 (1991) (citing Restatement (Second) of Torts §§ 766 cmt. t, 774A (1979)). Furthermore, as Coons asserts, a claim for tortious interference with contractual relations need not include an allegation that the contract interfered with has been permanently severed. *Consolidation Coal Co. v. District 5, United Mine Workers of America,* 336 Pa.Super. 354, 485 A.2d 1118, 1127 (1984). Again, Coons has alleged, *inter alia,* that TCS made disparaging remarks about him to ACTS' employees, that TCS attempted to intimidate ACTS into discharging Coons, and that TCS communicated incomplete and misleading information about him to ACTS. Taking these allegations as true and drawing all reasonable inferences in favor of Coons, we find Coons could prove a set of facts to support his claims that TCS' alleged interference caused pecuniary, consequential, and emotional and reputational damages.

## II. Coons' Abuse of Process Claim

■■■■ To state a cause of action for abuse of process in Pennsylvania, the claimant must allege (1) an ulterior motive on the part of the alleged abuser and (2) the use of judicial process for a purpose other than that for which it was designed. *Gilbert v. Feld,* 788 F.Supp. 854, 861 (E.D.Pa.1992) (citations omitted). The existence of probable cause for the action in which the abuse is alleged is immaterial, and the claimant need not allege that the proceedings have terminated in his favor. *Id.*

■■■■ TCS argues in its motion that Coons has failed to allege an abuse of process claim, and that Coons has in fact alleged a claim for malicious prosecution.[5] TCS argues that since, to assert the latter tort, one must allege that proceedings have terminated in one's favor, any such claim by Coons must fail.

We agree with TCS' argument. The only specific factual allegations Coons makes in his abuse of process counterclaim refer to the initiation of this action and the service of the complaint upon Coons. These allegations belong in a malicious prosecution claim, not one for abuse of process. Coons cannot assert malicious prosecution at this time since these proceedings have not terminated in Coons' favor. We find, therefore, that Coons has not stated a claim for abuse of process and therefore his counterclaim for abuse of process will be dismissed.

## III. TCS' Case or Controversy Argument

■■■■ TCS' argument that Coons' counterclaims fail to present a case or controver-

---

4. The factors include:
   (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979).

5. Malicious prosecution, as opposed to abuse of process, is concerned with the wrongful initiation of proceedings rather than the perversion of proceedings already underway. *See Cameron v. Graphic Management Associates, Inc.,* 817 F.Supp. 19, 21 (E.D.Pa.1992) (citing *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987)).

sy under Article III of the United States Constitution is without merit. The purpose of the case or controversy requirement is to ensure that actual issues are litigated before the courts to prevent the judiciary from issuing advisory opinions on hypothetical, abstract, or unrealistic issues. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 753–56, 96 S.Ct. 1251, 1258–60, 47 L.Ed.2d 444 (1976). The Third Circuit has characterized this requirement as one of a legal controversy that is real and not hypothetical, affecting an individual in a concrete manner with sufficiently adverse parties to enable the controversy to be resolved in judicial proceedings. *International Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) (citations omitted).

The controversy presented by Coons' counterclaims is real and not hypothetical. Indeed, it arose from the same dispute that led TCS to commence this lawsuit. Coons alleges that his contractual relations with ACTS have been damaged as a direct result of improper actions by TCS. Coons' allegations may or may not have merit; the merits of his claims are not before us. To withstand TCS' argument, it is enough that we find the counterclaims present issues that are sufficiently real and immediate, and that they are capable of being resolved before this Court.

#### Conclusion

In summary, we find that defendant Coons could prove a set of facts in support of each of his counterclaims for tortious interference. Therefore, plaintiff TCS' motion to dismiss those counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied. We further find that Coons cannot prove any set of facts in support of his claim for abuse of process, and therefore TCS' motion to dismiss this counterclaim is granted. An order follows.

#### ORDER

AND NOW, this 16th day of August, 1994, upon consideration of plaintiff's motion to dismiss defendant's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and all responses thereto, it is

hereby ORDERED that the motion is DENIED as to defendant's counterclaims for tortious interference and GRANTED as to defendant's counterclaim for abuse of process. Defendant's abuse of process counterclaim is therefore DISMISSED.