J-A23033-20

2020 PA Super 279

| | | |
|---|---|---|
| DONALD BRASWELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELODY WOLLARD AND | : | No. 2589 EDA 2019 |
| DOLGENCORP, LLC. | : | |

Appeal from the Order Entered July 30, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180303384

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:          **FILED DECEMBER 09, 2020**

Donald Braswell (Braswell) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) granting full summary judgment in favor of the defendants/appellees, Melody Wollard (Wollard) and her employer, Dolgencorp, LLC (Dolgencorp).

The case arose from Braswell's dispute with a convenience store cashier, Wollard, over whether he received correct change on his purchase of some cat food. Relying on his receipt showing he received $10 less than what was due, Braswell took that sum from the register and reported the incident to police. Wollard subsequently reported that Braswell had robbed the store of that money.

---

[*] Retired Senior Judge assigned to the Superior Court.

Police soon arrested and detained Braswell on criminal charges despite knowledge of a receipt showing that Braswell was, in fact, owed the money he took. When those charges were dismissed months later, Braswell filed civil claims against Wollard and Dolgencorp, including counts of false arrest, false imprisonment and malicious prosecution. The trial court ruled that Braswell failed to raise genuine issues of material fact as to those claims, but for the reasons that follow, we reverse the summary judgment order and remand the case for further proceedings.[1]

## I.

Our recitation of the facts is taken from the certified record. In 2017, Braswell entered a Dollar General convenience store in Bensalem, Pennsylvania to buy cat food that cost $6.89. Braswell paid for the item, and the cashier, Wollard, gave him $3.11 in change, as if he had only paid with a $10 bill. However, Braswell received a receipt reflecting that he had paid with a $20 bill.

After a verbal altercation over whether Braswell had received the correct change, he and Wollard entered a back office within the store to watch a surveillance video of the transaction. The video did not resolve the argument,

---

[1] Braswell does not challenge the portions of the summary judgment order dispensing with his other claims, so those rulings are not at issue here.

but Braswell took a $10 bill from a cash drawer in the office. Wollard was holding the cash drawer at the time Braswell took the bill.

Braswell immediately called the police to report what had happened, but when they arrived, Braswell was already gone. Wollard had remained, and she gave a witness statement to Officer Francis Hayden, asserting that Braswell had entered the store's office without permission and stolen $10 from the register's cash drawer or till. Officer Hayden reviewed a surveillance video showing that Braswell had indeed entered the office and taken a $10 bill from a register. The surveillance video was never entered into evidence and witness descriptions of the video's contents are vague as to how well the recording presented the events in question.

The officer acknowledged that since Braswell had himself called the police to report the incident and only taken an amount equivalent to the disputed sum, it was clear that Braswell believed he was only taking his own money. The officer was also aware that Braswell had a receipt showing that he was legally entitled to the money he took. Nevertheless, later that evening, police located Braswell and arrested him on charges of robbery and theft.

At the preliminary hearing on those charges in Braswell's criminal case, Officer Hayden expressly stated that he relied on both Wollard's account and the surveillance video to justify Braswell's arrest. Wollard also testified at the hearing that Braswell's receipt had resulted from her intentional act of entering a $20 payment on the register: "He was talking about his cat so I

just typed in 20 dollars to open the drawer to start counting the change."
Hearing Transcript, 3/1/2017, at p. 15. Wollard explained that in the several years she had operated the register at the store, she "always put in just any amount just so the drawer will open." *Id*. at p. 14.

The magisterial district judge found that the arrest was supported by probable cause and imposed a bail amount of $75,000. Braswell was unable to post bail and as a result, he remained in custody for over **four months** until prosecutors, having reviewed the evidence, including the surveillance video recording of the incident, finally decided to drop all criminal charges.

Braswell then filed a civil suit against Wollard and Dolgencorp (the owner of the Dollar General store) seeking damages for false arrest, false imprisonment, malicious prosecution and defamation. Notably and contrary to her testimony in the criminal matter, Wollard stated in her deposition in the civil case that she keyed a payment of $20 into the register accidentally: "I think I just made a mistake." Wollard Deposition, 10/24/2018, at p. 14.[2]

_____

[2] Wollard testified that the register's till balanced out correctly after Braswell's transaction, which purportedly established that she correctly gave him change for a $10 payment on an item costing $6.89. However, the till total is irrelevant because it does not rebut Braswell's claim that after he paid $20, Wollard kept $10 of his change for herself. For example, had the till contained exactly $100 at the time of Braswell's purchase, both of their competing versions of the transaction would lead to the same final sum. If Braswell's story is true, then the total would be $106.89 ($100 + $20 (to till) − $3.11 (to Braswell) − $10 (to Wollard) = $106.89 in the till). If Wollard's story is true, the total would be identical ($100 + $10 (to till) − $3.11 (to Braswell) = $106.89 in the till).

- 4 -

Wollard and Dolgencorp moved for summary judgment. The trial court granted the motion, finding that Braswell had failed to raise an issue of genuine material fact as to any of his claims. *See* Trial Court Opinion, 9/26/2019, at 4-5. The trial court reasoned that even viewing the evidence and all reasonable inferences in a light favorable to Braswell, the evidence could not support a finding that Wollard deliberately gave false information to the police. *Id*. The trial judge concluded that, at most, the evidence supported a reasonable inference that Wollard was merely "mistaken" when reporting to police that a robbery had occurred. *Id*.

Additionally, while the trial court recognized that Braswell and Wollard disagreed on what had happened, it determined that "there is no evidence of record from which a jury could infer that [Wollard's] desire to have criminal proceedings initiated against [Braswell] was the determining factor in Officer Hayden's decision to begin criminal proceedings against [Braswell]." *Id*. at 2. The trial court stated that Braswell could not prove his claims as a matter of law because, even if Wollard lied, the police could have independently relied on surveillance video to establish probable cause for Braswell's arrest.

Braswell timely appealed, arguing that the trial court erred in finding there were no disputed issues of fact as to whether Wollard deliberately gave false information to the police, leading to his arrest and incarceration. He

contends that his civil claims of malicious prosecution, false arrest and false imprisonment should have gone to a jury.[3]

## II.

## A.

Braswell first contends that the trial court erred in ruling that he could not make out his claim for malicious prosecution. This cause of action has three elements: (1) the defendant has initiated criminal proceedings against the plaintiff without probable cause; (2) the defendant has acted deliberately with malice; and (3) the proceedings have terminated in favor of the plaintiff. *See Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010).

---

[3] "In determining whether the lower court erred in granting summary judgment, the standard of review is *de novo* and the scope of review is plenary." *Valentino v. Philadelphia Triathlon, LLC*, 209 A.3d 941, 950 (Pa. 2019). To survive a defense motion for summary judgment, a plaintiff must "adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1207 n.15 (Pa. 2009).

"[S]ummary judgment will be granted only in those cases which are free and clear from doubt." *See Washington v. Baxter*, 719 A.2d 733, 737 (Pa. 1998). "Where the facts can support conflicting inferences, it cannot be said that the case is free from doubt and thus ripe for summary judgment." *Id*. at 740 n.10. "[A]n appellate court may reverse the entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to judgment as a matter of law." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1004 (Pa. 2003).

Probable cause for an arrest is defined as "facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." **Commonwealth v. Rogers**, 849 A.2d 1185, 1192 (Pa. 2004).  Courts must evaluate probable cause in light of "all relevant facts under a totality of circumstances analysis."  **Commonwealth v. Hernandez**, 935 A.2d 1275, 1284 (Pa. 2007).

In this case, the trial court found that there was no evidence from which a jury could conclude that Wollard acted with malice by relaying information to police she knew to be false.  The trial court also ruled that police would have had probable cause to arrest Braswell regardless of whether Wollard intentionally made false allegations.  Taking the evidence in the light most favorable to Braswell, we conclude that the trial court erred as to both of those elements.

**B.**

Regarding malice, there was sufficient evidence for a jury to reasonably infer that Wollard knowingly made a false report.  Braswell attempted to raise this inference with the following facts:

- Braswell's receipt was direct evidence that he paid $20 and not $10.

- Wollard gave two conflicting explanations for the receipt, stating initially that she had *deliberately* hit the $20 register key even when receiving a different denomination, but then stating later that that she hit the $20 key *accidentally*.

- Braswell's behavior indicates that he honestly believed he paid with a $20; otherwise he would not have called the police and taken only $10 out of a register full of money.

- Braswell's charges were dismissed by the District Attorney after a review of the evidence, including a surveillance recording of the incident, allowing a reasonable inference that the video supported Braswell's account.[4]

By correctly acknowledging that Wollard could have been mistaken when she reported a robbery but rejecting Braswell's circumstantial evidence that Wollard knowingly made a false accusation, the trial court erroneously resolved an issue of credibility, which is the sole province the jury. *See White v. Owens-Corning Fiberglas, Corp.*, 668 A.2d 136, 142 (Pa. Super. 1995) (credibility of a witness "is a determination for the jury and necessarily creates genuine issue of material fact.").

It is well-settled that summary judgment cannot be granted where the evidence supports conflicting inferences, as it does here. *See Washington v. Baxter*, 719 A.2d 733, 740, n.10 (Pa. 1998) ("Where the facts can support conflicting inferences, it cannot be said that the case is free from doubt and

---

[4] Wollard and Dolgencorp opted not to introduce the surveillance video recording into evidence despite it being in their possession. In the light most favorable to Braswell, this supports a reasonable inference that it would have bolstered Braswell's account that he had tendered a $20 bill and that Wollard gave a false statement to police. *See Clark v. Phila. Coll. of Osteopathic Med.*, 693 A.2d 202, 204 (Pa. Super. 1997) (quoting *Haas v. Kasnot*, 92 A.2d 171, 173 (Pa. 1952)) (explaining that a jury may infer that evidence would disfavor a party "[w]here [it] would properly be part of a case, [it] is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so[.]").

thus ripe for summary judgment."). Accordingly, since any issue of Wollard's personal knowledge and subjective intent had to be decided as a matter of credibility, it was for the jury to weigh her testimony, not the trial court. *See Martin v. Evans*, 711 A.2d 458, 463 (Pa. 1998) (credibility determinations are within the sole province of the jury, which may believe all, part or none of the evidence presented).

**C.**

With respect to the probable cause element of malicious prosecution, the trial court misapplied the law in ruling that police would have arrested Braswell regardless of whether Wollard knowingly made false accusations.

Officer Hayden himself testified that he arrested Braswell based in part on what Wollard had told him. The officer's viewing of the convenience store's surveillance video only corroborated what Braswell had himself reported – that he took $10 from the store register because he believed it was rightfully his. The officer knew Braswell had a receipt that partially bolstered his claim that it was Wollard who had attempted to perpetrate a theft against *him*.

Essentially, Wollard and Braswell had each accused the other of committing a crime. The sole basis for the officer to believe Braswell to be the perpetrator was Wollard's statement to that effect. The officer could have only arrested Braswell because he believed that Wollard was more credible.

On these facts, it was impossible for Officer Hayden to have grounded his probable cause determination on evidence other than Wollard's version of

events. If, for summary judgment purposes, it is presumed that Wollard knowingly gave false information to the police, then as a matter of law, it must also be presumed that Braswell's arrest was initiated by those accusations:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. **When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false** and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> **If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information**. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

*Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 711 (Pa. Super. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 653, comment g) (emphasis added).

The presumption in Braswell's favor at the summary judgment stage was that Wollard gave a knowingly false statement. This being the case, the

trial court was foreclosed from concluding that the arresting officer could have exercised independent discretion when apprehending Braswell. Again, it was for the jury to resolve Wollard and Braswell's credibility as an issue of genuine material fact, and if it were to find Wollard not to be credible, then her accusations would necessarily be a determining factor leading to Braswell's arrest.

Because Braswell offered sufficient evidence to raise genuine issues of material fact as to all elements of his malicious prosecution claim, the portion of the order granting summary judgment as to this count in favor of Wollard and Dolgencorp must be reversed.

### D.

We next consider whether the trial court erred in granting summary judgment in favor of Wollard and Dolgencorp as to Braswell's claims of false arrest and false imprisonment. In Pennsylvania, these two civil causes of action are identical theories of liability. *See Alleyne v. Pirrone*, 180 A.3d 524, 543 (Pa. Cmwlth. 2018); *Gagliardi v. Lynn*, 285 A.2d 109, 111-12 (Pa. 1971). Both require "(1) the detention of another person (2) that is unlawful." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010); *see also Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (same).

Typically, these claims are lodged against defendants who have actually held the plaintiff in custody, such as police, but not defendants whose statements have prompted police to arrest the plaintiff. It was never alleged

in this case, much less proven, that Wollard or Dolgencorp detained Braswell. We must, therefore, decide as a preliminary matter whether the claims of false arrest and false imprisonment are applicable to parties who have not themselves taken the plaintiff into custody.[5]

Although we have found no controlling Pennsylvania decisions on this specific point, Pennsylvania law has been interpreted to allow such claims against private parties alleged to have indirectly caused an arrest by making a false report. **See Doby v. Decrescenzo**, 1996 WL 510095, at *13 (E.D. Pa. Sept. 9, 1996) (finding defendant could be liable for false arrest/imprisonment "if he has either knowingly provided false information to authorities or knowingly provided incomplete, misleading information to the authorities which resulted in the detention of another."); **see also Martucci v. Borough of Milford**, 2018 WL 175572 (E.D. Pa. Apr. 10, 2018); **Davila v. United States**, 247 F.Supp. 650, 658-59 (W.D. Pa. 2017); **Reiber v. Fillipone**, 2016 WL 7034704 (E.D. Pa. Dec. 2, 2016); **Gilbert v. Feld**, 788 F.Supp. 854, 862 (E.D. Pa. 1992).[6]

---

[5] In its opinion, the trial court alluded to such claims as being limited to situations where the defendant has held the plaintiff in custody, and the trial court seemed to grant summary judgment on that ground. **See** Trial Court Opinion, 9/26/2019, at 6. The trial court ruled more clearly that Braswell's claims lacked merit since his arrest would have been lawful independent of Wollard's statements. **See id**.

[6] We decline to adopt the contrary view of the minority of federal courts interpreting Pennsylvania law more narrowly. **See e.g., Simmons v.**

Moreover, and as outlined above, there is sufficient evidence from which a jury could reasonably infer that Wollard's statements to police were knowingly false and, therefore, a determinative factor in the police's decision to arrest Braswell. Thus, we are compelled to reverse the portions of the trial court's order granting summary judgment as to Braswell's claims of malicious prosecution, false arrest and false imprisonment. The order is affirmed in all other respects.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/20

---

***Poltrone***, 1997 WL 805093, at *8 (E.D. Pa. Dec. 17, 1997); ***Thomas v. IPC Int'l Corp.***, 2004 WL 292477, at *4 (E.D. Pa. Feb. 12, 2004).