J-S25033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER BURKE, LAUREN YANKANICH, AND TOM YANKANICH | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : | |
| | : | No. 1015 EDA 2020 |
| JACQUELINE KUBICEK AND RICHARD KUBICEK | : : : | |

Appeal from the Orders Entered March 5, 2020 and December 18, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-15922

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED SEPTEMBER 22, 2021**

Christopher Burke, Lauren Yankanich and Tom Yankanich (collectively, the Pet Owners) appeal two orders of the Court of Common Pleas of Montgomery County (trial court).  In the first order, entered on December 18, 2017, the trial court sustained the preliminary objections of Jacqueline Kubicek and Richard Kubicek (collectively, the Parents) as to counts I, II, III and V of the Pet Owners' amended complaint (the complaint).  In the second order, entered on March 5, 2020, the trial court granted the Parents' motion for summary judgment as to count IV.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

The Parents and Pet Owners are two neighboring families who began a feud after an unfortunate dog-bite incident. In 2016, the Parents' six-year-old child, N.K., was bitten on the face by the Pet Owners' dog while playing at the latter family's home. The child was taken to the hospital to receive stitches and the Pet Owners were cited for harboring a dangerous dog. According to the Pet Owners, they were told by an Animal Control Officer, John Daywalt, that they were only cited because the Parents had threatened to sue the police department unless the citation was issued. Ultimately, the Pet Owners were found not guilty of the cited offense.

A few months later, Christopher Burke (the father of Lauren Yankanich) saw N.K. playing with another dog in the neighborhood. Burke allegedly began taking photos of the child because he believed it refuted the Parents' claims that the bite had left her too traumatized to play with dogs. When Richard Kubicek heard of that activity from a neighbor (Nicole Schoedler), he remarked, "What, do we have a pedophile living across the street now?" Days later, Richard Kubicek confronted Christopher Burke at the Pet Owners' home, and after Burke denied taking any such photos, Richard Kubicek responded, "Good, because I thought maybe you were some kind of pedophile."

These hostilities continued into 2017 when the Pet Owners noticed that the Parents had named their wireless network, "FaceEatingDogTown." Following an exchange in which Tom Yankanich confronted Richard Kubicek

as to whether he had been made disparaging comments about the Pet Owners to others in the neighborhood, the Parents changed the name of their wireless network to "Accosted." Further, the Pet Owners accused the Parents of egging their car, setting off their car alarm and following them while they walked their dog.

The Pet Owners filed a complaint alleging five counts against the Parents: (I) common law malicious prosecution, (II) invasion of privacy, false light, (III) defamation, (IV) defamation (slander) *per se*, and (V) intentional infliction of emotional distress. The Pet Owners also sought punitive damages as to all counts. ***See*** First Amended Complaint, 8/23/2017, at Paragraphs 72-114. The Parents filed preliminary objections in the nature of a demurrer and the Pet Owners filed an answer to those objections.

On December 18, 2017, the trial court sustained the Parents' demurrer with respect to counts I, II, III and V. Those claims were dismissed and the punitive damages request was stricken without prejudice. The Parents' preliminary objection as to count IV was overruled.[1]

In 2019, the Parents then moved for summary judgment as to count IV and it was granted. The complaint was dismissed with prejudice and the Pet Owners timely appealed. They now contend in their appellate brief that the

---

[1] The Pet Owners attempted to immediately appeal this order, but it was quashed as interlocutory at appellate docket number 321 EDA 2018 because count IV was still pending.

- 3 -

trial court erred in sustaining the Parents' preliminary objections as to counts I, II, II and V, as well as granting the Parents' motion for summary judgment as to count IV.

## II.

## A.

The Pet Owners first contend that the trial court erred in sustaining the Parents' preliminary objection to the malicious prosecution count.[2]  Malicious

_____

[2] The applicable standard of review is as follows:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer.  All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred.  The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven.  This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.  When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

> Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is

*(Footnote Continued Next Page)*

prosecution has three elements: "[t]he defendant must have instituted proceedings against the plaintiff (1) without probable cause (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff." ***Kelly v. General Teamsters***, 544 A.2d 940, 941 (Pa. 1988).

For the purposes of such a claim, "probable cause" is defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." ***Id***. at 942 (quoting ***Miller v. Penn. R.R. Co.***, 89 A.2d 809, 811 (Pa. 1952)). Where probable cause is shown, malicious prosecution cannot be proven, even if the plaintiff prevailed in the underlying proceeding. ***See id***. A private person may be considered to have instituted a prosecution if they have "procured" it by making false accusations upon which the police rely in making a charging decision. ***See Bradley v. Gen. Acc. Ins. Co.***, 778 A.2d 707, 711 (Pa. 2001).

In this case, it is undisputed that the Pet Owners' dog bit the Parents' child, causing serious injuries that required her to be hospitalized. This alone was sufficient to justify the police's decision to issue a citation for a violation

---

possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

***Weiley v. Albert Einstein Med. Center***, 51 A.3d 202, 208–09 (Pa. Super. 2012) (citations omitted).

of the "Dog Law," which imposes liability on an owner of an animal that has "inflicted severe injury on a human being without provocation" and which has a "propensity to attack human beings." 3 P.S. § 459-502-A(a)(1)-(2).

The Parents accurately reported the incident to the police. Accordingly, because, as a matter of law, there was probable cause to support the citation issued to the Pet Owners, precluding the Pet Owners from relief, the trial court did not err in granting the Parents' preliminary objection as to the Pet Owners' claim of malicious prosecution.

**B.**

The Pet Owners next challenge the trial court sustaining Parents' preliminary objection as to count II, invasion of privacy: false light. This tort is defined as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Neish v. Beaver Newspapers*, 581 A.2d 619, 624 (Pa. Super. 1990) (quoting Restatement (Second) of Torts, § 652E).

Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Curran v.*

- 6 -

***Children's Service Center of Wyoming County, Inc.***, 578 A.2d 8, 12 (Pa. Super. 1989) (internal quotation marks and citation omitted). A small group of third parties is insufficient to establish publication. ***See Vogel v. W. T. Grant Co.***, 327 A.2d 133, 137-38 (Pa. 1974). "[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning plaintiff's private life to a single person or even to a small group of persons." ***Doe v. Wyo. Valley Health Care Sys. Inc.***, 987 A.2d 758, 766 (Pa. Super. 2009).

Pet Owners alleged that they were placed in a false light when the Parents engaged in a "smear campaign" against them by exaggerating the extent of N.K.'s injuries and the Pet Owners' culpability for the attack. The specific communications outlined in the count included photos of N.K.'s injuries, claims by the Parents that N.K. was traumatized and needed plastic surgery, claims by the Parents that the Pet Owners refused to dispose of their dog, and the Parents renaming of their wireless network to "FaceEatingDogTown." The Pet Owners alleged that these communications were directed at nine people in total.

However, nine people is a relatively small group of persons, falling short of the number of people necessary to constitute publication to the public at large. The statements enumerated in the count were not shown to be false, nor would they cause a reasonable person to take offense. There is no allegation that anyone other than the Pet Owners ever noticed that the Parents

renamed their wireless network, "FaceEatingDogTown." Thus, the trial court did not err in sustaining the Pet Owners' preliminary objection as to this count.

**C.**

The Pet Owners next contend that the trial court erred in granting the Parents' preliminary objection as to the defamation count, which was based on the same communications at issue in the false light count discussed above. The Pet Owners alleged alternatively that the statements were either defamatory or slander *per se* because they insinuate that the Pet Owners committed a crime of moral turpitude.

The elements of defamation are:

(a) Burden of plaintiff. — In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

(b) Burden of defendant. — In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.
(2) The privileged character of the occasion on which it was published.
(3) The character of the subject matter of defamatory comment as of public concern.

42 Pa.C.S. § 8343.

In determining whether a statement is capable of defamatory meaning, the trial court must ascertain as a matter of law whether the statement is an opinion or an assertion of fact. **See Mathias v. Carpenter**, 587 A.2d 1, 3 (Pa. Super. 1991). "A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. A simple expression of opinion based on disclosed facts is not itself sufficient for an action of defamation." **Vino v. Meredith**, 515 A.2d 571, 575 (Pa. Super. 1986).

"A statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from dealing with him." **Kryeski v. Schott Glass Tech., Inc.**, 626 A.2d 595, 600-01 (Pa. Super. 1993) (quoting **Zartman v. Lehigh County Humane Soc.**, 482 A.2d 266, 268 (Pa. Super. 1984)). "Whether the challenged statements are capable of defamatory meaning is a question of law for the court to determine in the first instance." **Id**.

Mere "expressions of opinion are not actionable." **Id**. Nor are "statements which are merely annoying or embarrassing or 'no more than rhetorical hyperbole[.]'" **Id**. (quoting **Redding v. Carlton**, 296 A.2d 880, 881 (Pa. Super. 1972)).

Here, the trial court did not err in sustaining a preliminary objection on this count because the Pet Owners did not assert facts showing that they suffered reputational or pecuniary harm as a result of the Parents' statements.

Further, the Pet Owners did not assert facts showing that the Parents' statements constituted more than mere opinion about whether the Pet Owners were reasonably diligent in protecting N.K. from their dog. Significantly, the citation for harboring a dangerous animal was still pending when these statements were made, so the dangerousness of the dog was an open question at that time.

The Parents could not have made defamatory comments essentially by stating their opinion that the Pet Owners were guilty of that summary offense. The Parents demonstrated the grounds for their opinion by disclosing to their audience the facts which they believed justified it. These facts included pictures of N.K.'s injuries, as well as the undisputed fact that the Pet Owners' dog bit the child.

The trial court also did not err in granting a preliminary objection as to the Pet Owners' alternative allegation of slander *per se*. Such a claim is proven if it is shown that the speaker has imputed to the plaintiff "conduct, characteristics, or a condition that would adversely affect her in her lawful business or trade[.]" ***Walker v. Grand Cent. Sanitation, Inc.***, 634 A.2d 237, 240 (Pa. Super. 1993). Slander *per se* also includes statements "imputing to the plaintiff a criminal offense, punishable by imprisonment[.]" ***Brinich v. Jencka***, 757 A.2d 388, 397 (Pa. Super. 2000). It is not necessary for the plaintiff to plead and prove that slander *per se* caused actual harm. ***See id***.

The Parents' statements do not fit any of the definitions of slander *per se*. When the statements were made, the Pet Owners had been cited for harboring a dangerous dog, which is a summary offense that is not punishable by imprisonment. Since the citation was pending at that point, the Parents could not have been making a *false* allegation of a crime or a crime of moral turpitude.

Additionally, harboring a dangerous dog is a summary offense and not a crime punishable by imprisonment, so the Parents' statements could, by definition, not satisfy that element of slander *per se*. There is also no allegation in the complaint that the commission of that offense would be incompatible with or harmful to the Pet Owners' livelihoods. Necessarily, then, the trial court did not err in sustaining the Parents' preliminary objection as to this count because it could not have been proven under either of the Pet Owners' theories of liability.

**D.**

We now consider whether the trial court erred in granting the Parents' preliminary objection as to count V of the Pet Owners' complaint in which they asserted a claim of intentional infliction of emotional distress (IIED).

In order to state a claim of IIED, a plaintiff must plead that the defendant intentionally acted with "extreme and outrageous conduct" causing severe emotional distress. ***Taylor v. Albert Einstein Med. Ctr***., 754 A.2d 650, 652 (Pa. 2000). Outrageous conduct is defined as being "so outrageous

in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." ***Hoy v. Angelone***, 720 A.2d 745, 754 (Pa. 1998). Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ***Miller v. Perainom***, 626 A.2d 637, 641 (Pa. Super. 1993) (quoting ***Kazatsky v. King David Memorial Park, Inc.***, 527 A.2d 988, 995 (Pa. 1987)).

In this case, the trial court did not err in ruling that the Pet Owners failed to allege the utterance of statements which rise to the level of extreme or outrageous conduct. We agree with the trial court that the Pet Owners have alleged "typical examples of bickering between neighbors who have animosity towards one another and are clearly not the type of behavior which would cause a community member to proclaim it was "'outrageous.'!" Trial Court Opinion, 3/9/2021, at 13.

## III.

Lastly, the Pet Owners dispute the trial court's order granting summary judgment in the Parents' favor as to slander *per se* claim asserted in count IV of the complaint. This count concerned the two instances in which Richard Kubicek allegedly referred to Christopher Burke as a "pedophile."

"In determining whether the [trial] court erred in granting summary judgment, our standard of review is *de novo* and our scope of review is plenary." ***Braswell v. Wollard***, 243 A.3d 973, 977 n.3 (Pa. Super. 2020)

(citation omitted).  A trial court's decision to enter summary judgment must be reviewed according to the standard outlined in the summary judgment rule, Pa.R.C.P. 1035.2, which provides that:

> where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.  Where the non-moving party bears the burden of proof of an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.  Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.  Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Kornfeind v. New Werner Holding Co., Inc.***, 241 A.3d 1212, 1216 (Pa. Super. 2020) (quoting ***Oberdick v. TrizecHahn Gateway, LLC***, 160 A.3d 215, 219 (Pa. Super. 2017)).

The elements of slander *per se* have been discussed in the previous discussion above, but to summarize, the claim requires a showing that the defendant either imputed to the plaintiff's conduct that would have an adverse effect on their livelihood, ***see Walker***, 634 A.2d at 244, or imputed to the plaintiff's conduct amounting to a criminal offense that is punishable by imprisonment, ***see Brinich***, 757 A.2d at 397.

In the present case, Richard Kubicek rhetorically asked his neighbor (Nicole Schoedler) if Christopher Burke was a "pedophile" just after being told by Schoedler that Burke had been taking photos of N.K.  Three individuals were within earshot of that comment and all of them had already heard from

- 13 -

Schoedler that Burke had taken such photos. Two days later, Kubicek confronted Burke about the photos and quipped that he had been concerned Burke was "some kind of pedophile."

The Pet Owners alleged that these two statements each constituted slander *per se* because molesting a child is a crime of moral turpitude and the comments jeopardized Burke's employment at a local school. The Pet Owners also contend that these remarks caused Christopher Burke to suffer extreme emotional and mental distress, as well as loss of reputation and standing in his community.

We find that the trial court did not err in granting summary judgment because the Pet Owners failed to raise a genuine issue of material fact with respect to the defamation/slander claim. First, Kubicek's use of the word "pedophile," in the presence of Schoedler and others, could not have been defamatory because it was an opinion based on nothing more than Schoedler's description to him of what had transpired. Kubicek did not intimate that he had any undisclosed facts which could support his comment about Burke. Moreover, the comment would not qualify as a publication because it was made in the presence of only three people, all of whom would have understood the factual basis for the statement. It would have also been obvious to those observers that Kubicek was speaking in hyperbole, not making a serious allegation of criminal conduct.

With respect to Kubicek's second use of the word "pedophile" directly to Burke himself, the comment again could not be defamatory or slanderous as a matter of law. The Pet Owners do not allege that any third parties overheard this exchange, so it was clearly not disseminated to the degree necessary to qualify as a publication. Burke was also fully aware of the facts that gave rise to Kubicek's statement, so the opinion could not have been based on any undisclosed defamatory facts. Thus, the trial court did not err in granting summary judgment in the Pet Owners' favor as to count IV of the complaint, and that ruling must, therefore, stand.[3]

Orders affirmed.

*Judgment Entered.*

_Joseph D. Seletyn, Esq._
_Prothonotary_

*Date: 9/22/2021*

---

[3] The Pet Owners also appeal the trial court's striking of their request for punitive damages, which they had sought as a remedy in all five counts. "Punitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." **Feld v. Merriam**, 485 A.2d 742, 747-48 (Pa. 1984) (internal quotation marks and citations omitted). "The purpose of punitive damages is to punish a tortfeasor for outrageous conduct, and to deter him or others from similar conduct." **Hutchison ex rel. Hutchison v. Luddy**, 870 A.2d 766, 770 (Pa. 2005). Here, the trial court concluded (and we agree) that the Pet Owners failed to plead sufficient facts of malicious, wanton and oppressive conduct to support a claim of punitive damages. Regardless, the Pet Owners are not entitled to damages, compensatory or punitive, because all of their underlying claims are legally insufficient.