J-A28025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LOUANN STROTHMANN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHB SPORTS, INC. D/B/A HIESTER | : | No. 1565 MDA 2020 |
| LANES | : | |

Appeal from the Order Entered November 5, 2020
In the Court of Common Pleas of Berks County Civil Division at No(s):
17-04552

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: FEBRUARY 8, 2022**

Louann Strothmann (Appellant) appeals from the order granting the motion for summary judgment filed by CHB Sports, Inc., d/b/a Hiester Lanes (Appellee), in the underlying personal injury action. Appellant contends that the trial court erred in granting Appellee's motion for summary judgment because there are genuine issues of material fact concerning whether there was a dangerous defect in Appellee's flooring and whether Appellee had notice of the alleged defect. We reverse and remand for further proceedings.

The trial court provided a brief summary of the facts of this case as follows:

On April 18, 2017, [Appellant] filed a complaint against [Appellee] alleging one count of negligence arising from a slip and fall incident at [Appellee's] bowling alley on March 26, 2016. At

_____

[*] Former Justice specially assigned to the Superior Court.

approximately 8:30 a.m., [Appellant] arrived at [Appellee's bowling alley] to attend her daughter's college bowling tournament. [Appellant] stayed the entire day and traveled back and forth from the bleachers to the restroom about four times. Around 6:00 p.m., [Appellant] alleges she tripped and fell while walking from the restroom to the bleachers.

After her incident, [Appellant] returned to [the Appellee's bowling alley] to take photographs of the area where she had fallen. [Appellant] admits that the photographs are "shadowy" and do not "show exactly what we want it to show." These poor photographs are the only evidence that [Appellant] has regarding the condition that caused her to slip and to fall.

Trial Ct. Op., 3/26/21, at 1-2.

On January 27, 2020, Appellee filed a motion for summary judgment.

The trial court summarized Appellee's motion as follows:

[Appellee] contended in its motion for summary judgment that [Appellant] was unable to establish either that a dangerous condition existed or that [Appellee] had either actual or constructive knowledge about any dangerous condition. In her deposition, [Appellant] stated that she was uncertain about what had caused her to trip, and she was unable to identify the exact area where she had fallen.

[Appellee] further argued in its motion that [Appellant] never noticed any bad condition during the approximately eight times she had traversed the same area. [Appellee] received no warning or complaint regarding a dangerous condition on the floor. Kathryn Scheipe, [Appellee's] manager who worked on the day of [Appellant's] fall, testified prior to [Appellant's] incident, she was unaware of any complaints relating to the area where [Appellant] had fallen. All of [Appellee's] other employees also testified that they are unaware of any trips and falls in the carpeted area at [Appellee's bowling alley]. Prior to this case, [Appellee] had no claims or lawsuits filed against it as a result of a slip-and-fall in the carpeted area at [the bowling alley].

[Appellee] further contends that [Appellant] does not know what the flooring condition was that caused her to trip. She expressed several different causes in her deposition: "a large raised bump;" a "divot;" a condition "like a seam, and it's not;" a "seam;" a

- 2 -

"crack" and "whatever this was or wasn't in the floor." [Appellant] further admitted that if she had looked to the ground, she would have been unable to see a condition in the flooring "without scrutinizing it."

[Appellee's] witness, James Rappoport, an architectural and interior design expert, examined the flooring and subflooring of [Appellee's bowling alley] around the area in which [Appellant] fell and was able to unequivocally conclude that no "defect" existed. Mr. Rappoport examined the two parallel structural concrete slabs running the entire length of the building. One slab on the side closer to the women's restroom was lower than the slab that ran along the side closer to the bowling lanes. Mr. Rappoport stated in his report that structural concrete slabs on grade tend to settle and otherwise become out-of-level during the initial curing process and over time settle in repose. He reported that [.25] inch variation in elevation at this type of expansion joint is the tolerance referenced in the Guidelines of the Building and Concrete Institute. The variation at [the bowling alley] was just less than the [.25] inch difference. Mr. Rappoport determined that the carpet was slip resistant and placed securely and compliantly over the joint expansion, adhering and compliant with all Federal codes and ordinances governing egress and accessible routes.

[Appellee's] Biomechanical Engineering expert, Valentina Ngai, drafted an expert report. She evaluated [Appellant's] medical records along with [Appellant's] testimony to determine the cause of [Appellant's] fall. She opined that if [Appellant], when traversing from the bathroom to the bleachers, ran into the less than [.25] inch floor deviation, the less than .25 inch elevation change in the flooring is less than the minimum toe clearance during level walking of .6 inches. Therefore, Ms. Ngai concluded that under normal ambulation kinematics and kinetics, this elevation change in flooring would not contact and arrest [Appellant's] swing foot.

[Appellee] also argued that [Appellant] failed to set forth evidence to rule out other possibilities for her fall, such as tripping or stumbling with no connection to any defects on the floor.

*Id.* at 2-4 (record citations omitted).

On February 13, 2020, Appellant filed her response to Appellee's motion for summary judgment. The trial court summarized and addressed Appellant's response as follows:

> In her response, [Appellant argued] that a witness, Wendy Stamm, found the defect. Ms. Stamm testified that her foot "literally went in the area where she fell" and that it was a hole the length of her foot; however, this evidence does not support [Appellant's] version of her accident. [Appellant] alleges that she tripped over something higher than the rest of the flooring and not that a hole in the flooring caused her fall.

*Id.* at 4.

On November 5, 2020, the trial court granted Appellee's motion for summary judgment and dismissed all claims against Appellee with prejudice. Appellant filed a timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following issues:

1. Whether the trial court erred as a matter of law in granting Appellee's summary judgment motion where there were genuine issues of material fact outstanding and Appellee was not entitled to relief as a matter of law as Appellant presented substantial evidence that her fall, and resulting injuries, while in Appellee's establishment was the result of a defect in the flooring?

2. Whether the trial court erred as a matter of law in granting Appellee's summary judgment motion where there were genuine issues of material fact outstanding and Appellee was not entitled to relief as a matter of law as Appellant presented substantial evidence that Appellee had notice of the defect in the floor of Appellee's establishment?

Appellant's Brief at 5 (some formatting altered). Because Appellant's issues are interrelated, we address them together.

"In determining whether the [trial] court erred in granting summary judgment, our standard of review is *de novo* and our scope of review is plenary." ***Braswell v. Wollard***, 243 A.3d 973, 977 n.3 (Pa. Super. 2020) (citation omitted).

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof of an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Oberdick v. TrizecHahn Gateway, LLC***, 160 A.3d 215, 219 (Pa. Super. 2017). Although "the non-moving party must be given the benefit of all reasonable inferences," the non-moving party "need not be given the benefit of inferences not supported by the record or of mere speculation." ***Myers v. Penn Traffic Co.***, 606 A.2d 926, 930 (Pa. Super. 1992) (*en banc*). Moreover, in order to prevail in a negligence action, the plaintiff must establish: 1) the defendant owed her a duty; 2) the defendant breached that duty; 3) the plaintiff suffered actual harm; and 4) there is a causal relationship between

the breach of the duty and the harm. ***Z.F.1 ex rel. Parent v. Bethanna***, 244 A.3d 482, 495 (Pa. Super. 2020). "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." ***Carrender v. Fitterer***, 469 A.2d 120, 124 (Pa. 1983) (citing Restatement (Second) of Torts § 328B, cmts. c and d).

Appellant contends that she was a business invitee of Appellee, and Appellee had an affirmative duty to protect her against not only known dangers, but also dangers that could be discovered with reasonable care. Appellant's Brief at 14. Appellant asserts that the circumstantial evidence was sufficient to establish that there was a dangerous defect in the floor that caused her to fall and suffer injuries. ***Id.*** at 21. Moreover, Appellant argues that her testimony alone was sufficient to prove that a defect in the floor caused her fall, and her testimony was corroborated by witness, Wendy Stamm. Appellant claims that the trial court erred when it "improperly excluded testimony favorable to [Appellant's] position," and relied on Appellee's expert who asserted that any deviation in the height of the floor was *de minimis*. ***Id.*** at 24-25. Moreover, Appellant states that Appellee knew of the defect in the floor or, through the exercise of reasonable case, should have known of the defect. ***Id.*** at 27. In support, Appellant claims that testimony from Appellee's former employee, Wendy Stamm, in addition to Appellee's current employee, Eric Fritzeen, provided "ample evidence to suggest that [Appellee], by and through its employees, ought to have known

of the existence of the flooring defect that caused [Appellant] to fall and known so prior to [Appellant's] fall." *Id.* at 28. Appellant asserts:

> [Appellee's] former employee, Wendy Stamm, provided that the area in question is an "uneven portion of the floor" and a place where someone could "easily overturn their ankle or something." Eric Fritzeen, [Appellee's] facilities manager, provided that the area where [Appellant] tripped is a spot where the two concrete slabs were not level by a span of a quarter of an inch.

*Id.* at 19 (citations to the reproduced record omitted).

Appellee does not dispute that Appellant was a business invitee. Appellee's Brief at 18. However, Appellee asserts that even when the record is viewed in the light most favorable to Appellant, there is insufficient evidence to justify an inference of causation and negligence. *Id.* at 19. Appellee contends that Appellant failed to prove through direct or circumstantial evidence what caused her fall, and therefore, if "[Appellant] cannot identify what caused the fall, she cannot prove that [Appellee] breached a duty owed to her." *Id.* at 21. Additionally, Appellee asserts that it did not have notice of any flooring defect, and the testimony of Wendy Stamm and Eric Fritzeen does not support the conclusion that Appellee knew of a defect or could have discovered the defect through the exercise of reasonable care. *Id.* at 25-28. Moreover, Appellee argues that there is no evidence that a dangerous condition existed or that Appellee had reason to know of the condition. *Id.* at 34. Indeed, Appellee points out that [Appellant] "admitted in deposition testimony that she is not certain what she tripped on and cannot identify the exact area where she fell." *Id.* Finally, Appellee notes that Wendy Stamm

allegedly discovered a defect in the floor after Appellant fell, and Eric Fritzeen

testified that he was unaware of any dangerous condition in the floor.  *Id.* at

35-39.

The trial court addressed Appellant's issues as follows:

Because a plaintiff has the burden of proof, a defendant may establish a right to summary judgment by demonstrating the plaintiff's inability to show an element essential to her claim.  If the plaintiff fails to contravene the defendant's claim with evidence raising a factual dispute as to that element, the defendant is entitled to entry of judgment as a matter of law. *Pappas v. UNUM Life Insurance Company of America*, 856 A.2d 183 (Pa. Super. 2004).  In the case *sub judice*, [Appellant] is a business invitee.  The duty owed to a business invitee is the highest duty owed to any entrant upon the land.  The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care.  With respect to conditions on the land which are known or discoverable by the possessor, the possessor is subject to liability only if he:

a. Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee(s), and

b. Should expect that they will not discover the condition, or will fail to protect themselves against it, and

c. Fails to exercise reasonable care to protect them against the danger.

[*Carrender*, 469 A.2d at 123].

This court granted summary judgment because it found, as a matter of law, that [Appellant] had failed to produce sufficient evidence establishing what actually had caused [Appellant's] fall and where the fall had actually occurred.  [Appellant] suggests that something was raised on the floor that caused her accident. [Appellant's] witness, Wendy Stamm, does not support [Appellant's] argument.  Ms. Stamm testified that she found a large hole in the floor.  A raised or uneven portion on the floor does not equate to a large hole, which was the length of a person's

foot. Moreover, [Appellant] never noticed any defect [during] the approximately eight times she had traveled over the floor. [Appellant] even admitted she could not find any condition "without scrutinizing it." A large hole would not need scrutinization.

Additionally, an invitee must prove whether the proprietor of the land created the harmful condition, or he had actual or constructive notice of such condition. ***Estate of Swift v. Northeastern Hosp. of Phila.***, 690 A.2d 719[, 722] (Pa. Super. 1997). Even assuming *arguendo* that [Appellant] could show the cause of her fall in the instant case, she produced no evidence that [Appellee] was aware of any defect. Prior to the date of this incident, [Appellee's] manager was unaware of any complaints relative to the area where [Appellant] had fallen. Although the non-moving party must be given the benefit of all reasonable inference, that party need not be given the benefit of inferences not supported by the record or of mere speculation.

Trial Ct. Op., 3/26/21, at 5-6.

After review, we are constrained to disagree with the trial court. When the record is reviewed in the light most favorable to Appellant as the non-moving party, the evidence established that there are genuine issues of fact concerning the presence of a dangerous defect that caused Appellant to fall, and whether Appellee knew of or should have known of this defect. ***See Carrender***, 469 A.2d at 124; ***see also Z.F.1***, 244 A.3d at 495.

First, we do not agree with the trial court's characterization of Wendy Stamm's testimony. ***See generally*** Trial Ct. Op., 3/26/21, at 5-6. Stamm explained that she knows Appellant, worked at the bowling alley in 2004 to 2005, continues to frequent the bowling alley, and was present when Appellant fell. N.T., Stamm Deposition, 8/15/19, at 13-14, 19. Stamm stated that the bowling alley was her "home away from home" and that she has been

at the alley hundreds of times. *Id.* at 14. Although Stamm did not see Appellant fall, she was "almost sure" that Appellant was headed to the restroom. *Id.* at 24-26. Stamm provided the following account of Appellant's fall, estimation of the location of the fall relative to the defect in the floor, and statement regarding knowledge of the defect:

Q. Okay. So while --- so when you brought over the ice, how long after you bringing over the ice did she said she fell on a divot?

A. Right when I went back.

Q. Okay.

A. Did she say anything else?

A. No, except that feel that. So I felt it.

Q. So she said feel that and pointed ---?

A. Meaning where she fell.

Q. So she pointed over to the area near the restroom?

A. Well, it wasn't at the restroom ---

Q. Okay.

A. --- it was at the end of the bleachers.

Q. Okay. And she said feel that?

A. Yeah, it's right there on the floor.

Q. And what did you do?

A. I went and felt it and there was no denying it.

Q. What do you mean by that?

A. It was like --- do you want me to get up and ---?

Q. You have to describe everything you're doing, that's all, so that he can get a record. Yeah, but go ahead.

A. So I got up and I walked over to the area and I started walking and you literally --- my foot literally went in the area where she fell. So if you did not know it was there and you went in, it was --- it --- you could easily overturn your ankle or something.

Q. How --- you're - you're using the word divot. Can you describe it in more detail?

A. That's how --- that's what I used. An uneven portion of the floor that just maybe --- the floor sinks a little bit further down and as you're walking over the carpet.

Q. So by --- you said uneven portion of the floor. Do you mean that there was one level and then it rose to another level or ---?

A. If you're walking, it was not even. It was not even flooring.

Q. Okay.

A. It was carpet, we were walking on carpet. So I know that underneath that carpet is concrete. So it was not even.

Q. How do you know it's concrete?

A. Just - - - okay. So a conversation ensued during that with other people being there and other employees working there. I was like does --- you can feel it, it's right there. And I don't remember exactly who it was, but they said well, we know it's there, it's always been covered by the tables of the balls, the bowling balls. But it's not covered right now because the bleachers were brought in and the bleachers do not extend to cover that area where it was uneven.

Q. Okay. So you were over --- you gave [Appellant] the ice. Then you went over, she said when you were handing her the ice, I fell over a divot --- ?

A. I said what did you fall over? I said what happened there? And she said it's right there, I fell over that --- that hole --- it's like a hole at the end of the bleachers. She goes go feel that.

Q. And so you went over there and you said you just were walking and used your foot?

A. You could --- I just walked and I went wow. Yes.

Q. And you were able to find the location how? By her pointing, or do you see it, feel it?

A. By her pointing to the area where it was at.

Q. Could you see it?

A. You can't see it because it's covered by carpet. You would only notice if it's there if you actually stepped on that area.

Q. So you felt it with your foot only?

A. Yeah

Q. And you --- you describe it as a --- ?

A. A divot in the flooring.

Q. And while you were doing this, was anyone around you?

A. Just other --- other spectators that were sitting there.

Q. Anybody that you know?

A. I --- I can't tell you who was there and who --- who wasn't there. There's so many people at these events, there really is.

*Id.* at 28-33.

Additionally, Appellant's daughter, Taylor Strothmann, similarly testified that there was a divot or crack in the floor where Appellant fell. N.T., Taylor Strothmann Deposition, 7/17/19, at 16. Taylor Strothmann further stated that although she did not know of anyone who actually fell, she was aware that other people had tripped on this defect. *Id.* Taylor Strothmann confirmed that the area where Appellant fell is typically covered by the tables of bowling balls. *Id.*

Appellee's facilities manager, Eric Fritzeen, testified that he was present when the carpet at the bowling alley was removed a year after Appellant fell. N.T., Fritzeen Deposition, 9/27/17, at 11. Fritzeen testified that it was his understanding that Appellant fell near the women's restroom. *Id.* at 13. He

also explained that when the carpet was removed, the floor in that area consisted of two uneven concrete slabs and patch where the two slabs met. *Id.* at 14. Fritzeen estimated that this patch was made eight or nine years earlier by the prior owner of the bowling alley, but the patch was made to taper the difference in height between the slabs. *Id.*

Our review concludes that the testimony of Stamm, Taylor Strothmann, and Fritzeen does not preclude the existence of genuine issues of material fact, but rather, their testimony supports Appellant's argument that outstanding factual issues exist. Notably, even though the alleged defect in the floor was described differently by Appellant, Stamm, Taylor Strothmann, and Fritzeen, the testimony consistently reflected some form of irregularity in the flooring resulting in unevenness and differences in the height of the flooring. Whether or not these irregularities constitute dangerous defects that caused Appellant's fall and injuries are issues for determination by a jury or a judge acting as fact finder because differences in witness testimony alone do not discount the existence of genuine issues of material fact. *See Braswell*, 243 A.3d at 978 ("It is well-settled that summary judgment cannot be granted where the evidence supports conflicting inferences, as it does here."). The finder of fact can interpret conflicting testimony, determine credibility, and may believe all, part, or none of witness testimony in its deliberations. *Id.*

Stamm's testimony does not refute Appellant's claims, and we are constrained to disagree with the trial court's conclusion that Stamm described a "large hole." *Compare* N.T., Stamm Deposition, 8/15/19, at 28-33, *with*

Trial Ct. Op., 3/26/21, at 5-6. Rather, Stamm described the defect in multiple ways, and her description was not limited to a hole. She testified that the floor was "not even," "the floor sinks a little bit," it is "like a hole," and a "divot" at the end of the bleachers. N.T., Stamm Deposition, 8/15/19, at 29-33. When viewed in the light most favorable to Appellant as the non-moving party, it is reasonable to conclude that Stamm's testimony supported Appellant's claim that there was a defect in the floor at the end of the bleachers, and this uneven portion of the floor caused Appellant's fall. **See Myers**, 606 A.2d at 930. Contrary to the trial court's conclusion, it is reasonable to determine that if there is any hole or depression in the floor, the outer portion would be raised in comparison to the inner portion. Conversely, the outer portion of a hole in the floor would be higher than the inner portion. Regardless of any semantic distinction, the deposition testimony of both Stamm and Taylor Strothmann present facts to establish that there was an uneven area of the flooring that caused Appellant to fall and suffer injuries.

Moreover, with respect to notice, Stamm's testimony supports the argument that Appellee knew of or had reason to know of the defect in the flooring, supporting the conclusion that Appellee had constructive notice. **See Estate of Swift**, 690 A.2d at 722. Although Taylor Strothmann's testimony revealed no specific instances of prior falls, she did testify that people had tripped on a defect in the floor and testified that this defect was near the bathroom; although it was typically covered by tables of bowling balls, the

defect was not covered when the bleachers were in place. N.T., Taylor Strothmann Deposition, 7/17/19, at 15-17. Stamm presented similar testimony and stated that the defect in the floor was typically covered by tables of bowling balls. Stamm Deposition, 8/15/19, at 31. Additionally, Stamm testified that the defect in the floor was in the area where Appellant fell, Appellee's employees were aware of this defect, and this defect is usually covered unless the bleachers are in place. *Id.* at 31-33.

For these reasons, we cannot agree with the trial court that the record precludes genuine issues of material fact. When viewed in the light most favorable to Appellant, there is evidence presenting the existence of a dangerous defect, as well as testimony that Appellee had constructive notice of this defect. Additionally, there was evidence that the uneven flooring was typically covered by tables of bowling balls unless the bleacher were in place as they were when Appellant fell. Accordingly, we are constrained to reverse and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction is relinquished.

Judge Lazarus joins the memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/08/2022